**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0759n.06

**No. 09-5279**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 15, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,     )
     )
   Plaintiff-Appellee,     )    ON APPEAL FROM THE
     )    UNITED STATES DISTRICT
   v.     )    COURT FOR THE EASTERN
     )    DISTRICT OF TENNESSEE
JOHN L. MISER,     )
     )
   Defendant-Appellant.     )
     )

BEFORE:  BATCHELDER, ROGERS, and KETHLEDGE, Circuit Judges.

ROGERS, Circuit Judge.  Defendant John Miser appeals his conviction for drug and firearm offenses, challenging the denial of his pretrial motion to suppress and arguing that there was insufficient evidence to support a conviction.  Specifically, Miser argues that there was insufficient evidence to establish that he possessed the drugs and firearm found during the search of a trailer where he was living.  The arguments, however, lack merit because the district court's decision to credit the testimony of investigating officers over Miser's own testimony was not clearly erroneous, and because a rational jury could find that the element of possession was proved beyond a reasonable doubt.

Miser was charged with possession of 500 grams or more of cocaine with intent to distribute, possession of marijuana and oxycodone with intent to distribute, possession of a firearm in furtherance of a felony, and possession of a firearm by a convicted felon.  At a July 22, 2008 hearing

on Miser's motion to suppress the evidence supporting the indictment, Hamblen County police officers Eric Carson and David Cribley testified that on the morning of January 18, 2008, they received an anonymous tip that Miser and another man, Frankie Crum, were wanted by law enforcement and were living in a trailer on Lot 93 of the Everhart Campground in Hamblen County, Tennessee. The informant also said that the trailer contained a sizable quantity of illegal drugs. The officers testified that as they approached the trailer, Miser was standing on the front porch. The officers identified themselves, asked Miser for identification, and verified through a record check that there was an outstanding warrant for him in Florida. When questioned, Miser denied that Crum was present and invited the officers to "come in and look for yourself."

The officers testified that when Miser opened the front door and let them inside, they smelled marijuana and saw a partially smoked marijuana cigarette lying in an ashtray. Miser admitted that he had just finished smoking the marijuana cigarette. Officer Carson began walking toward the bedroom, and Miser said, "Stop, you can't go in there." The officers then arrested Miser for possession of marijuana and found a bag of marijuana in his pocket. After being advised of his *Miranda* rights, Miser signed a consent to search the trailer. Nevertheless, the officers obtained a search warrant and, after transporting Miser to jail, returned to the trailer several hours later to search the bedroom, where they found 15 large bales of marijuana (approximately 170 pounds) and a large quantity of cocaine. A firearm and oxycodone pills were found in the trailer's kitchen area.

Miser's testimony at the hearing was significantly different. Miser testified that after he answered the officers' questions about his identity and whether Crum was present, the officers asked

to be allowed into the trailer, and Miser refused. The officers then pushed their way into the trailer. After spotting the partially smoked marijuana cigarette, Officer Carson walked all the way through the trailer and into the bedroom, and only after looking around decided that "we better get a warrant." Miser testified that after the officers arrested him, he signed the consent to search because the officers had already been through the whole trailer and had seen all there was to see.

On cross examination, Miser admitted that he slept in the trailer the night before the search, and stayed there "off and on." His Dodge Neon was parked outside the trailer when the officers arrived. Miser also admitted knowing that the trailer contained "170-some pounds" of marijuana, because he could smell it while inside the trailer. Finally, Miser admitted that the marijuana found in his pocket was "the same stuff" as the marijuana found in the trailer.

At the conclusion of the evidentiary hearing, the magistrate judge recommended denial of Miser's motion to suppress. To the extent the officers' testimony differed from Miser's, the magistrate judge adopted the officers' version of the facts and rejected Miser's. The magistrate judge found that Miser invited the officers into the trailer to see for themselves that no one else was present; that the officers stepped inside, detected a strong odor of marijuana and observed a partially smoked marijuana cigarette in plain view; and that the officers thus had probable cause to justify Miser's arrest and the issuance of a search warrant. In the alternative, the magistrate judge assumed a version of the facts based on Miser's testimony, and found that exigent circumstances justified the officers' entry into the trailer, because the officers had detected the odor of marijuana wafting

through the trailer's open front door. The district court reviewed de novo the entire record, adopted the magistrate judge's recommendation, and denied Miser's motion to suppress.

The officers repeated their testimony at trial. In addition, several other key pieces of evidence connected Miser to the contraband found in the trailer. Tom Everhart, the owner of the campground, testified that his home adjoined the campground and that he could see everyone coming and going from the campground. Everhart testified that Miser was the sole occupant of the trailer from October 2007 until his arrest on January 18, 2008. Everhart further testified that from October 2007 through January 2008, the only car regularly parked outside the trailer on Lot 93 was a Dodge Neon, which Everhart saw Miser driving almost every day, leaving in the morning and returning late each afternoon. Everhart testified that Lot 93 was leased to Miser's niece, Samantha Wheatley, who lived elsewhere but allowed Miser to live in the trailer. Eight days before his arrest, Miser paid Everhart $283 to cover the monthly lease and back rent.

James Henegar testified that on January 18, 2008, he shared a cell with Miser in the Hamblen County jail. Henegar first met Miser during the summer of 2007. Henegar testified that he occasionally saw Miser with a firearm, and that the firearm recovered from the trailer resembled a gun that Miser had previously shown him. Henegar testified that, while they were sharing a cell, Miser said that his home had been raided and that he had been caught with his firearm and quantities of cocaine, marijuana, and oxycodone. Henegar further testified that the gun seized by the police was the same one Miser had previously shown him.

Federal ATF agent Gregory Moore testified that he processed Miser after his arrest and that Miser reported his home address as Lot 93 at the Everhart Campground. A key to the trailer was found on the same key ring that contained a key to Miser's Dodge Neon. However, no fingerprints were taken from the firearm recovered from the trailer. Agent Moore testified that the firearm was not fingerprinted because federal agents investigating the case believed the link between Miser and the gun had been established.

At the close of the government's evidence, Miser moved for a judgment of acquittal, arguing that there was insufficient evidence linking him to the drugs and firearm seized from the trailer, other than his presence when the officers arrived. The district court denied the motion, explaining that a rational jury could find all the essential elements of the charged crimes. The jury convicted Miser of possession of 500 grams or more of cocaine with intent to distribute, possession of marijuana and oxycodone with intent to distribute, and possession of a firearm by a convicted felon. Miser was sentenced to 120 months in prison, the statutory minimum, and now appeals his conviction.

The district court properly denied Miser's motion to suppress because the evidence, viewed in the light most favorable to the United States, supports the district court's finding that Miser consented to the officers' entry of the trailer. The district court adopted the magistrate judge's conclusion that the officers' version of the facts was more credible than Miser's. Because "[f]indings of fact anchored in credibility assessments are generally not subject to reversal upon appella[te] review," *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (en banc), the district court's conclusion that Miser voluntarily consented to the search was not clearly erroneous.

Whether consent to a search is voluntary is "a question of fact to be determined from the totality of all the circumstances," *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973), and a district court's factual findings supporting denial of a motion to suppress are reviewed for clear error. *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008). When the district court has denied the motion to suppress, this court must consider the evidence in the light most favorable to the government. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010); *United States v. Garrido*, 467 F.3d 971, 977 (6th Cir. 2006). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Rose*, 889 F.2d 1490, 1494 (6th Cir. 1989) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

Viewed in the light most favorable to the government, the evidence supports the district court's conclusion that Miser consented to the initial entry of the trailer. Miser argues that the officers' testimony was "inherently" incredible, and therefore that the district court's finding of consent was not a "permissible" view of the evidence. However, it is not difficult to imagine why a suspect might consent to a search under these circumstances. Miser may have believed that the officers were looking only for Frankie Crum—not drugs—and that consenting to entry for purposes of verifying the absence of Crum would not expose him to a thorough search of the trailer. Indeed, the vast majority of criminal defendants voluntarily consent to be searched—even when they are carrying drugs. *See, e.g.*, Samuel R. Gross & Katherine Y. Barnes, *Road Work: Racial Profiling and Drug Interdiction on the Highway*, 101 Mich. L. Rev. 651, 675-76 (2002).

Thus, there is nothing "inherently" incredible about the officers' testimony that Miser consented to the search of the trailer. Any argument that the police officers exaggerated or misrepresented the voluntariness of Miser's consent goes to the credibility of the officers' testimony, not to any inherent implausibility of Miser's consent under the circumstances. Such credibility determinations are for the factfinder. Because the evidence, viewed in the light most favorable to the United States, supports the district court's conclusion that Miser consented to the entry of the trailer, the court properly denied Miser's motion to suppress.

Likewise, the district court properly denied Miser's motion for judgment of acquittal because the evidence amply established that Miser possessed the drugs and firearm found inside the trailer where he was living. Evidence is sufficient to support a criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Because the record contains ample evidence from which a rational jury could find beyond a reasonable doubt that Miser actually or constructively possessed the drugs and firearm seized from the trailer, his sufficiency of the evidence challenge lacks merit.

"[C]onstructive possession exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Hunter*, 558 F.3d 495, 504 (6th Cir. 2009). "Physical proximity to drugs, or mere presence in an area where drugs are found, is not sufficient." *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991). However, "[t]he government may meet its burden" of proving

possession beyond a reasonable doubt "through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).

In this case, the evidence was more than sufficient to establish constructive possession beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. In addition to Miser's presence when the officers arrived, circumstantial evidence demonstrated Miser's connection to the trailer and the contraband found inside. There was testimony that Miser had been the sole occupant of the trailer for at least three months prior to his arrest; that Miser paid rent to Everhart for his use of Lot 93; that a key to the trailer was found on the same key ring that contained a key to Miser's Dodge Neon; that Miser admitted to the officers that he had been staying in the trailer; and that Miser gave his home address as Lot 93 of the Everhart Campground.

There was also testimony that the cocaine and marijuana were found in the trailer's only bedroom; that when Officer Carson began walking toward the bedroom, Miser said, "Stop, you can't go in there," suggesting Miser was aware that the bedroom contained contraband; that Miser admitted that he had just smoked a marijuana cigarette, which was lying in plain view; and that he had an additional quantity of marijuana in his pocket. Officer Cribley testified that while he was transporting Miser to jail, they drove through a "high class" neighborhood, and Miser commented that he could buy one of the houses in the subdivision "with what's in that trailer." Morever, James Henegar testified that while they were sharing a cell, Miser admitted to him that he was storing large

quantities of drugs in the trailer, and that the gun seized by the police was the same one Miser had previously shown him.

Miser relies on *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976), in which the court held that the defendant's presence as a back-seat passenger in a car transporting stolen firearms, by itself, was not sufficient to prove that he knew that firearms were in the trunk of the car. But unlike the defendant in *Birmley*, Miser was the exclusive resident of the trailer for an extended period of time. Thus, *Birmley* does not support Miser's argument that no rational jury could have found the element of possession beyond a reasonable doubt.

Miser also contests the credibility of James Henegar, but this challenge goes to the weight—not the sufficiency—of the evidence. "This Court has consistently stated that in cases in which we assess the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (internal quotation marks and alteration omitted). As we said in *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984), "attacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence" (emphasis in original).

We do not need to decide whether we would find constructive possession proven beyond a reasonable doubt. We are satisfied that "any rational trier of fact could" find constructive possession beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. And because the evidence must be viewed "in the light most favorable to the prosecution," *id.*, a rational jury could find that Miser "knowingly

ha[d] the power and the intention . . . to exercise dominion and control over" the drugs and firearm

found in the trailer. *Hunter*, 558 F.3d at 504.

Because the district court properly denied both Miser's motion to suppress and motion for

acquittal based on insufficiency of the evidence, the conviction is affirmed.